## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| NICOLE GABY,                ) | |
|                    ) | |
|          Plaintiff,        ) | |

NICOLE GABY,                                )
                                            )
                Plaintiff,                  )
                                            )
        v.                                  )        Cause No.: 3:06-CV-788-TS
                                            )
CHAD DULIN, Individually and in his         )
Official Capacity, ROBIN TRUSTY,            )
Individually and in her Official Capacity,  )
ROBERT SIMS, Individually and in his        )
Official Capacity, STARKE COUNTY            )
SHERIFF'S DEPARTMENT, AND                   )
STARKE COUNTY, INDIANA,                     )
                                            )
                Defendants.                 )

## OPINION & ORDER

This matter is before the Court on the Defendants' Motion for Summary Judgment

(DE 32), filed on November 29, 2007. The Plaintiff responded on December 21, 2007 (DE 36),

and the Defendants replied on January 10, 2008 (DE 39). The Court set the matter for a ruling

conference on April 18, 2008.


## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be

granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary

judgment, after adequate time for discovery, against a party "who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the Court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). The Court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). The Court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party

and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

## FACTS

Construing all facts in a light most favorable to the Plaintiff, and making all reasonable inferences in favor of the Plaintiff, the following facts are assumed true for the purposes of summary judgment.

At around 2:30 a.m. on February 26, 2005, Knox Police Officer Tom Belork (Belork) initiated a traffic stop of the Plaintiff, Nicole Gaby (Gaby). Belork administered various field sobriety tests as well as a breathalyzer, which yielded a blood alcohol content of .18. Belork arrested Gaby and transported her to the Starke County Sheriff's Department.

Once they arrived at the sheriff's department, Officer Robin Trusty (Trusty) escorted Gaby into the breathalyzer room in order to administer a second test. Gaby's recollection is that she and Trusty were the only individuals in the room at that point. Trusty asked Gaby to take a second breathalyzer test. Gaby did not understand why a second test was necessary. A twenty-five minute conversation ensued, and at the end of that period Gaby had yet to take another test. The parties dispute whether she refused the test or was merely asking why she had to take it during that time. During this exchange Trusty called Gaby a "bitch," and Gaby responded that she believed the insult violated her civil rights.

Trusty then summonsed Officer Chad Dulin (Dulin) and informed him that Gaby was being uncooperative. Trusty and Dulin then picked Gaby up by her arms, with Trusty digging

her nails into Gaby's arms, and carried her to a restraining chair.[1] At some point in this transfer, several officers, including Trusty and Dulin, began beating and kicking Gaby. During the melee Dulin picked Gaby up over his shoulder and slammed her onto a concrete floor. Then the officers kicked Gaby in the chest, stomach, and back. Once on the floor, Gaby rolled over onto her stomach, and Dulin got on her back and began slamming her face into the concrete.

Gaby then lost consciousness six to eight different times for an unknown duration. When she would wake up, there would be three officers present and she would still be getting kicked. In response to the kicking, Gaby spit on one of the officer's badges. The officer responded by picking her up by the throat and choking her until she lost consciousness again. When she gained consciousness again, Gaby was being strapped into a restraining chair. Once Gaby was placed in the restraining chair, Berlock began choking her.

Once the struggle concluded, Gaby was left in the chair for three to five hours. Dulin then removed Gaby from the chair and had her processed through booking. As a result of the beating, Gaby suffered extensive bruising, contusions, and a large golf ball size lump on her head. Gaby claims she verbally requested medical treatment several times for several days. The parties agree she was treated by Nurse Rebecca Elsasser on February 28, 2005, in response to a nursing request form that Gaby submitted that same day. Gaby was transported to the Starke County Hospital for x-rays, which were negative for fractures.

Gaby appeared in court for her bond hearing[2] on February 28. She was released on bond

---

[1] The restraining chair had wrist and ankle straps. (Gaby Dep. 15; DE 36-2). It did not have shoulder straps, and the Plaintiff does not recall whether it had a lap belt. (*Id.* at 15–16.)

[2] The Defendants characterize this proceeding as a "bond hearing," (Def. Mem. in Supp. of Mot. for Summ. J. 33; DE 33), and the Plaintiff does not dispute that characterization. Given the proximity in time to the arrest, the Court presumes this hearing was the initial hearing at which a judicial determination of probable cause was made.

on March 7, 2005. Gaby was charged with operating a vehicle dangerously while intoxicated, battery by bodily waste on Dulin, battery by bodily waste on Trusty, and operating a vehicle while intoxicated prior to conviction. She pled guilty to the two counts of battery, and the State of Indiana dropped the remaining charges.

## ANALYSIS

### A.    Exhaustion of Remedies

The Defendants first move for summary judgment on all § 1983 claims against all Defendants arguing that the claims are barred by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, because the Plaintiff did not exhaust available administrative remedies. This argument is misguided because the PLRA does not apply to the Plaintiff.

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prisoner" refers to "any person incarcerated or detained in

---

*See* Ind. Code § 35-33-7-1 ("A person arrested without a warrant for a crime shall be taken promptly before a judicial officer . . . ."); Ind. Code § 35-33-7-2 (requiring that at the initial hearing a judicial officer determine whether "there is probable cause to believe that any crime was committed and that the arrested person committed it[.]"); *Griffith v. State*, 788 N.E.2d 835, 840 (Ind. 2003) (citing *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975) ("An individual detained following a warrantless arrest is entitled to a 'prompt' judicial determination of probable cause as a prerequisite to any further restraint on liberty."). A detainee is also informed of the amount and conditions of bail at the initial hearing. Ind. Code § 35-33-7-5(4). Because a detainee is informed of the amount and conditions of bail at the same hearing in which judicial determination of probable cause is made, the Court assumes that when the Defendants refer to the Plaintiff's "bond hearing" they are referring to the initial hearing at which a probable cause determination was made. It is possible that the "bond hearing" in this context refers to a hearing subsequent to the initial hearing at which the Plaintiff was requesting an alteration to the bond, Ind. Code § 35-33-8-5, but given the close proximity to the time of the arrest, this is unlikely. This distinction is important, as will be explained in greater detail later, because the determination of whether the Fourth or Fourteenth Amendment governs the Plaintiff's denial of medical care claim turns on whether the neglect occurred before or after a judicial determination of probable cause.

any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). To determine whether a plaintiff is a prisoner confined in jail, courts "look to the status of the plaintiff at the time he brings his suit." *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004). The term "does not comprehend a felon who has been released." *Kerr v. Puckett*, 138 F.3d 321, 323 (7th Cir. 1998).

The Defendants do not dispute that the Plaintiff was not a prisoner at the time she filed her lawsuit. Accordingly, the PLRA does not apply to her, and she was not required to exhaust administrative remedies before pursuing her § 1983 claims in a civil suit. Because the PLRA does not apply to the Plaintiff, the parties' disagreement over the existence and adequacy of grievance procedures in the Starke County Jail is irrelevant.

**B.      Municipal and Official Capacity Liability**

The Defendants next assert that the Plaintiff cannot establish a prima facie case under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the municipal Defendants or the remaining Defendants in their official capacity. In order to pursue a § 1983 suit against a municipality or a defendant in an official capacity, a plaintiff must establish that an official policy or custom was the moving force behind a constitutional violation. *Id.* at 694. Such a policy or custom can take three forms: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims ex rel. Sims v. County of Bureau*, 506

6

F.3d 509, 515 (7th Cir. 2007).

As the second form in particular demonstrates, an official policy or custom can be proved indirectly.

> The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned, thus in either event adopting, the misconduct of subordinate officers. When this method of proof is used, proof of a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference.

*Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) (citations omitted).  A plaintiff will normally need more than two or three incidents to establish a series of bad acts. *See Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir. 2003) ("two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice"); *Gable v. City of Chi.*, 296 F.3d 531, 538–539 (7th Cir. 2002) (three incidents in a four year period insufficient to establish pattern of erroneously denying to vehicle owners that their vehicles were in a particular lot and two incidents of car theft insufficient to establish a pattern of city employees breaking into automobiles and stealing property); *see also Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1277 (11th Cir. 2000) (three incidents of suspending students for displaying confederate flags insufficient to establish widespread practice). The series of bad acts must reflect "a permanent and well-settled practice of depriving . . . [citizens] of their constitutional rights." *Roach v. City of Evansville*, 111 F.3d 544, 549 (7th Cir. 1997).

The Plaintiff in this case proceeds under the second means of demonstrating a policy or custom. She points to two groups of evidence that she believes could establish at trial that the Starke County Sheriff's Department "maintained a persistent and widespread custom of

unconstitutional conduct." (Pl. Resp. 6; DE 36.) First she offers the observations of Nurse Rebecca Elsasser, the registered nurse who first examined the Plaintiff in the jail. In her deposition, Elsasser testified that she once observed officers employing a taser on an arrestee who was fully restrained in a restraining chair. (Elsasser Dep. 72–75; DE 36-3.) She also testified that in the past she had "asked Sheriff Sims to take . . . two individuals, in a medical emergency situation, to a hospital and he refused." (*Id.* at 33.)[3] No time frame is provided for these events.

Second, the Plaintiff points to the fact that in response to her request for copies of complaints stating § 1983 claims against the Starke County Sheriff's Department, its officers, or Sheriff Sims, the Defendants produced eight complaints along with a list of fifty cases in which Starke County was sued for the deprivation of constitutional rights. The Plaintiff then reasons that "[s]ince Ms. Gaby requested suits pertaining to [the] deprivation of constitutional rights, excessive force, and failure to provide medical care, one can only assume that most, if not all of those cases listed are relatively similar to Ms. Gaby's." (Pl. Resp. 7; DE 36.)

The Defendants ignore the Plaintiff's first group of evidence, Elsasser's statements, and focus all their effort on attacking the second group. The Defendants argue first that as for the list

---

[3]The Plaintiff also states that she is presenting evidence that "Nurse Rebecca Elsasser has also been asked to testify in at least two other cases of abuse and deprivation of constitution[al] rights by the employees of Starke County and SCSD." (Pl. Reply 2; DE 36). In support of this representation, the Plaintiff points to page 80 of Elsasser's deposition. On that page of the deposition, Elsasser is asked whether she either testified or had her deposition taken in cases involving Starke County in the past. She answered yes, and she said that the plaintiffs in those cases were James Smith and John Murphy. She does not discuss the nature of those cases at that point in the deposition. The next question presented to Elsasser was: "Do you recall other times beyond what we have talked about today where you have seen or where you have had a chance to maybe question what was going on in there, question from let's say an ethical perspective?" This series of questions and answers does not constitute evidence of other constitutional violations because there is no basis for inferring that Elsasser's ethical concerns necessarily encompass constitutional issues. For that reason the Court has instead relied only on Elsasser's statements regarding the one incident of excessive force and the two incidents of deliberate indifference (one of which involved James Smith).

of fifty cases naming Starke County as a defendant, simply presenting other lawsuits against Starke County does not establish a widespread practice. Second, the Defendants argue that the majority of the listed cases do not resemble this suit and do not even involve suits against the jail. Finally, as for the eight complaints against the Starke County Sheriff's Department officers, the Sheriff's Department, and Sheriff Sims, at least four of the complaints do not resemble the facts of this case.

Elsasser's statements alone would be insufficient to allow a jury to infer a widespread practice that is so permanent and well-settled that it constitutes a custom or practice. Viewing the evidence in a light most favorable to the Plaintiff, Elsasser's testimony indicates that she observed one instance of excessive force and two incidents of deliberate indifference over an unknown span of time. Given that Elsasser could not remember when these events occurred, including in which year they occurred (Elsasser Dep. 73; DE 36-3), the Court has no basis for inferring that the events occurred even in the same year. One incident of excessive force and two incidents of deliberate indifference over an unknown span of years does not reflect a permanent and well-settled practice of depriving citizens of their constitutional rights. The Plaintiff can only establish a widespread practice if Elsasser's statements are corroborated by her second group of evidence.

The are several problems with this second collection of evidence that the Plaintiff designates. The eight complaints are inadmissible hearsay. "Evidence presented to defeat a summary judgment motion need not be in admissible form, but it must be admissible in content." *Payne v. Pauley*, 337 F.3d 767, 775 n.3 (7th Cir. 2003). The allegations in the complaints are written assertions by out-of-court declarants offered to prove the truth of those allegations. The

9

complaints are not verified under penalty of perjury by the plaintiffs, and the Federal Rules of

Civil Procedure even allow inconsistent and hypothetical claims to be pled in a complaint. Fed.

R. Civ. P. 8(d). The complaints do not constitute affidavits under Federal Rule of Civil

Procedure 56(e). Also, eight complaints filed over seven years do not evidence a well-settled

practice of depriving inmates of their constitutional rights.

This last point is further solidified by the fact that some of the complaints are completely

dissimilar to this case. When the Plaintiff designated these cases as evidence, she represented to

the Court that they "are virtually identical to the complaint brought by Ms. Gaby." (Pl. Resp. 3;

DE 36.) Yet, the first complaint alleges that "FREDDIE G. BAKER, acting within the course

and scope of his employment for defendants, Starke County Sheriff's Department, carelessly and

negligently operated his motor vehicle into a vehicle operated by Maria Busuioc, in which the

plaintiff, Yvette Smith, was a passenger." This is not "virtually identical" to the claim that

multiple officers mercilessly beat an inmate for refusing a breathalyzer test. The second

complaint involves a custody dispute between the plaintiff and a law enforcement officer for the

North Judson Police Department.

The remainder of the complaints share some similarities with the allegations in this case.

The third complaint alleges that Starke County, Indiana, through its sheriff's department,

provided negligent medical care that resulted in an inmate's death from methadone intoxication.

The fourth complaint alleges deliberate indifference following an assault on the plaintiff by two

other inmates. The fifth complaint, filed by James Smith among other plaintiffs, alleges

deliberate indifference arising from a failure to properly treat staph infection, to properly care for

a suicidal inmate, and to properly treat an inmate who was assaulted by other inmates. The sixth

10

complaint alleges the Starke County Jail failed to provide access to medical care for a plaintiff who was arrested after being involved in an automobile accident. The seventh complaint alleges that the Starke County Jail failed to prevent an assault on the plaintiff and to provide him adequate care afterwards. The eighth complaint alleges false arrest and inadequate training in a drug investigation that included the discovery of the plaintiff's cousin's dead body in the plaintiff's garage. Even if the allegations in the complaints were not hearsay, these six incidents spread out over four years would not be sufficient to establish a widespread practice of excessive force, deliberate indifference to medical needs, or unreasonable denial of medical care.

The list of fifty cases in which Starke County was sued faces similar problems. To begin with, a simple list of fifty case names is not evidence of anything. The Plaintiff attempts to overcome this problem by arguing that since she requested suits pertaining to the deprivation of constitutional rights, excessive force, and failure to provide medical care, one can only *assume* that most, if not all of those cases listed, are relatively similar to hers. While the Court may make reasonable inferences in favor of the Plaintiff from the admissible designated evidence, *see Bellaver*, 200 F.3d at 492, the Court cannot assume any evidence. *See McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) ("Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion."). If the Court could assume evidence and then make inferences from it, the summary judgment process would be a wasted exercise. Even if the Court could assume that the fifty cases all involved factual scenarios similar to the Plaintiff's, the evidence would still be hearsay because the list of cases would be a substitute for the out-of-court allegations offered to prove the truth of those allegations.

Because the Plaintiff has failed to designate evidence from which a reasonable jury could

11

conclude that there was a custom or policy of using excessive force or unreasonably denying medical care, the Plaintiff cannot pursue claims against the municipal Defendants or any of the remaining Defendants in an official capacity for these claims.

### C.       Training and Hiring of Personnel

The Plaintiff asserts claims against Defendants Sims and the Starke County Sheriff's Department for deliberate indifference towards the training and hiring of personnel. "[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Such deliberate indifference occurs when "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. The focus is on the "adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* at 390. Furthermore, "the identified deficiency . . . must be closely related to the ultimate injury." *Id.* at 391. Proof of deliberate indifference resulting in inadequate training or supervision "can take the form of either (1) failure to provide adequate training in light of foreseeable consequences; or (2) failure to act in response to repeated complaints of constitutional violations by its officers." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1029–30 (7th Cir. 2006).

The Defendants designate evidence showing that all new patrol officers are required to complete forty hours of basic police training at a state accredited institution, six weeks of on-the-

12

job training, and a program at the Indiana Law Enforcement Academy in Plainfield, Indiana. Jail officers receive on-the-job training and attend jail officer's school. Both patrolmen and jailers attend sixteen hours of continuing education approved by the Starke County Sheriff's Department. The Plaintiff does not explain what is inadequate about this training, or more specifically, what inadequacy led to the deprivation of a constitutional right.

The Plaintiff again tries to use the eight complaints and list of fifty cases against Starke County to establish that "there is a genuine issue for trial as to whether the knowledge of Sheriff Sims and the SCSD about previous incidents of abuse and deprivation of constitutional rights and their ensuing failure to act amount to deliberate indifference." (Pl. Resp. 8; DE 36.) Not all of the allegations in the complaints are inadmissible in this context because the allegations of acts similar to those in this case can be offered to show notice rather than the truth of the matter asserted. However, only a few of the complaints that were filed over a span of several years contain allegations similar to those in this case. As such, those complaints are inadequate to establish that the risk that citizens would be deprived of their constitutional rights was so obvious, and the inadequacy of training was so likely to lead to the deprivation, that Defendants Sims and the municipal Defendants can reasonably be said to have been deliberately indifferent. *See Jenkins v. Bartlett*, 487 F.3d 482, 493 (7th Cir. 2007) (evidence that four individuals over five years were shot by police officers while in a vehicle not sufficient to show that defendants had actual or constructive knowledge that the police so often violate constitutional rights that further training is needed). The list of fifty cases in which Starke County is a defendant is of no help to the Plaintiff either, because, again, case names alone are not evidence of anything.

The Plaintiff's burden is similar on her deliberate indifference in hiring claim.

13

> Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.

*Bd. of County Com'rs  v. Brown*, 520 U.S. 397, 411 (1997). The link between inadequate scrutiny and the consequence of depriving a third party of federally protected rights must be specific to the official that caused the deprivation.

> [A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong."

*Id.* at 412.

While the Plaintiff states that she is pursuing a claim for deliberate indifference with respect to the hiring of personnel in one of the section headings in her brief (Pl. Reply 7; DE 36), she does not elaborate upon the basis of her claim or what evidence supports it. She does not explain what Defendant Sims and the municipal Defendants should have done differently in screening potential employees, nor does she state what facts in the officers' and jailers' backgrounds would have led a reasonable person to conclude that the obvious consequence of hiring those individuals would be the deprivation of citizens' federally protected rights. The Plaintiff has failed to prove that specific individuals were highly likely to inflict the specific injuries that the Plaintiff alleges. Having designated no such evidence, the Plaintiff could not sustain her burden at trial as to the deliberate indifference claims pertaining to training or hiring, and the Defendants are entitled to summary judgment on these claims.

14

**D.      Failure to Provide Medical Care**

The Plaintiff asserts that she "was deprived of her Eight[h] Amendment right to be free

from cruel and unusual punishment by the failure of SCSD to provide her with medical care."

(Pl. Resp. 8; DE 36.) The Plaintiff then evaluates the claim under the Eighth Amendment's

"deliberate indifference" standard and concludes that the Defendants were deliberately

indifferent to the Plaintiff's serious medical needs by making her wait several days for treatment.

The Defendants also analyze the claim under the Eighth Amendment. The Defendant argues that

the Plaintiff was not denied medical care, was not in serious medical need, and that the

Defendants were not deliberately indifferent. The Defendants also argue that the Plaintiff's claim

must fail because she has not introduced verifying medical evidence into the record.

While the parties analyze the Plaintiff's failure to provide medical care claim under the

Eighth Amendment, because the Plaintiff complains of treatment as a pretrial detainee prior to a

judicial determination of probable cause, the Fourth Amendment governs. *See Lopez v. City of*

*Chi.*, 464 F.3d 711, 719 (7th Cir. 2006) ("[W]e have held that the 'Fourth Amendment governs

the period of confinement between arrest without a warrant and the preliminary hearing at which

a determination of probable cause is made, while due process regulates the period of

confinement after the initial determination of probable cause.'") (quoting *Villanova v. Abrams*,

972 F.2d 792, 797 (7th Cir. 1992)). The deliberate indifference standard of the Eighth and

Fourteenth Amendments, which the parties refer to, "requires a higher showing on a plaintiff's

part than is necessary to prove an officer's conduct was 'objectively unreasonable under the

circumstances.'" *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007).

To determine whether a jail official's conduct is objectively unreasonable with respect to

15

an arrestee's medical care, a court must evaluate four factors. The first factor is whether or not the official had notice of an arrestee's medical need, either by word or through observation of physical symptoms. *Id.* Second, a court must consider the seriousness of the medical need. *Id.*[4] Third, the court must examine the scope of the requested treatment. *Id.* The second and third factors are closely related. "The Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the . . . the scope of the requested treatment." *Id.* For the fourth and final factor, a court must take into account wide-ranging police interests, including administrative, penological, or investigatory considerations. *Id.*

Here the Plaintiff's claims easily pass muster against Defendants Dulin and Trusty in their individual capacities at the summary judgment stage. Accepting the Plaintiff's allegations as true, the severe beating they administered to the Plaintiff would undoubtedly provide notice to the Defendants that medical care was necessary and the need serious. There is no dispute that the scope of needed treatment, as described by the Plaintiff, was not overly broad. There is also no claim that providing the Plaintiff with necessary care sooner than the two days she had to wait would unduly interfere with the administrative, penological, and investigatory interests of the jail.[5]

---

[4] It is not necessary for the seriousness of the medical need to rise to the level of objective seriousness that is required under the Eighth and Fourteenth Amendment's deliberate indifference standard. *Williams*, 509 F.3d at 403.

[5]The Defendants argue that this claim cannot stand against even Defendants Dulin and Trusty because the Plaintiff has failed to place verifying medical evidence into the record. The requirement of placing verifying medical evidence arises from *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996), a case that dealt with an Eighth Amendment claim. The Court is not aware of any such requirement under the Fourth Amendment, which makes sense since the seriousness of the medical need element is a lower threshold under the Fourth Amendment than it is under the Eighth Amendment. *Williams*, 509 F.3d at 403.

As for the municipal Defendants, there can be no liability on this claim, as explained earlier, because there is insufficient evidence of a policy or custom of unreasonably denying medical care to detainees awaiting the judicial determination of probable cause. As for Defendant Sims, liability does not lie against him either because he was not personally involved in the denial of care, "and a supervisor is not liable for the acts of . . . [his] subordinates under § 1983 unless . . . [he] was aware of and approved . .. his employees' conduct." *Sides v. City of Champaign*, 496 F.3d 820, 827 (7th Cir. 2007).

**E.      State Law Claims**

The Plaintiff's complaint asserts claims under Indiana law against Defendants Dulin and Trusty for assault, battery, negligence, and gross negligence, against Defendant Sims for negligence and gross negligence, and against Defendant Starke County for negligence.[6] Governmental entities are subject to liability for the torts committed by their employees unless one of the exceptions in the Indiana Tort Claims Act (ITCA), Ind. Code § 34-13-3-1 *et seq*, applies. *See Lake County Juvenile Ct. v. Swanson*, 671 N.E.2d 429, 439 (Ind. Ct. App. 1996).

The ITCA provides that "[a] governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the . . . enforcement of . . . a law . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). This provision is known as "law enforcement immunity." *City of Anderson v. Davis*,

---

[6]On the immunity issue, the Defendants first assert that the Defendants Dulin, Trusty, and Sims are immune in their individual capacity under Ind. Code § 34-13-3-5. The Plaintiff does not seem to dispute this, and the Court therefore assumes that the Plaintiff is only pursuing state law claims against these individuals in their official capacities.

743 N.E.2d 359, 362, 363 (Ind. Ct. App. 2001). The Defendants argue that they are all immune from suit for the state law claims of assault and battery under the law enforcement immunity provision.[7]

The Plaintiff has not alleged false arrest or false imprisonment, nor does she dispute that the Defendants were engaged in the enforcement of a law, *see St. Joseph County Police Dep't v. Shumaker*, 812 N.E.2d 1143, 1150 (Ind. 2004) (enforcement in the ITCA " means compelling or attempting to compel the obedience of another to laws, rules, or regulations, and the sanctioning or attempt to sanction a violation thereof"). Rather, she disputes that the officers were acting within the scope of their employment.

The seminal case in the Indiana courts for determining whether an individual acts within the scope of employment under the ITCA is *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450 (Ind. 2000). There the Indiana Supreme Court explained:

> The Restatement of Agency provides some general guidance for assessing the type of conduct that is within the scope of employment: "To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized." Restatement (Second) Agency § 229 (1958). The Restatement stresses that "[t]o be incidental, however, [an act] must be one which is subordinate to or pertinent to an act which the servant is employed to perform." Restatement (Second) Agency § 229 cmt. b (1958). Even tortious acts may fall within the scope of employment. In *Kemezy v. Peters,* 622 N.E.2d 1296 (Ind.1993), we said an employee's tortious act may fall within the scope of his employment "if his purpose was, to an appreciable extent, to further his employer's business." *Kemezy,* 622 N.E.2d at 1298 (quoting *Stropes v. Heritage House Childrens Ctr.,* 547 N.E.2d 244, 247 (Ind.1989)).
>
> The U.S. Supreme Court recently noted that this doctrine "has traditionally defined the 'scope of employment' as including conduct 'of the kind [a servant] is

---

[7]The Defendants' Memorandum in Support of the Motion for Summary Judgment does not explain what, if any, provision of the ITCA would cover state tort claims related to the denial of medical care, nor does it explain what, if any, provision of the ITCA or the common law would cover state tort claims related to negligent hiring and training.

> employed to perform,' occurring 'substantially within the authorized time and space limits,' and 'actuated, at least in part, by a purpose to serve the master,' but as excluding an intentional use of force 'unexpectable by the master.'" *Faragher v. City of Boca Raton,* 524 U.S. 775, 793 (1998) (quoting Restatement (Second) Agency § 228(1)).

*Id.* at 453. Police officers may even be immune from claims based on intentionally tortious conduct, "even when it is 'egregious' and apparently contrary to law." *Davis*, 743 N.E.2d at 365.

The Plaintiff claims that because she failed to take a breathalyzer test, Defendants Dulin and Trusty beat her and then unreasonably failed to provide medical care. Accepting the Plaintiff's allegations as true, the officers acted within the authorized time and space limits and their behavior was motivated, at least in part, to enforce the law. As such, they would seem to be covered by the law enforcement immunity provision of the ITCA. Because enforcing the intoxication and battery laws is within the "operational purpose or mission" of the Sheriff's Department, the municipal Defendants would seem to be covered by the provision as well. *See Shumaker*, 812 N.E.2d at 1151.

However, the Defendants do not address whether law enforcement immunity applies even when officers' actions amount to excessive force. The Defendants do state their belief that *O'Bannon v. City of Anderson*, 733 N.E.2d 1 (Ind. Ct. App. 2000), holds that allegations of excessive force are immunized under the law enforcement immunity provision. But the Court reads that case differently, finding that the Defendants' view of the holding cannot be correct given that the Indiana Court of Appeals found in that case that the plaintiff had "not demonstrated that the officers' use of force was unwarranted or excessive." *Id.* at 3. Because the plaintiff did not establish that the officers' use of force was unwarranted or excessive, the court

did not reach the question of whether the use of force would have been immunized had it been
unwarranted or excessive.

In *City of Anderson v. Davis*, 743 N.E.2d 359, 365 (Ind. Ct. App. 2001), a case
subsequent to *O'Bannon v. City of Anderson* and a case to which the Defendants also cite, the
Indiana Court of Appeals recognized that "[i]t is unclear if a police officer enforcing the law in
the scope of his employment would be exempt from immunity under the ITCA if his actions
amount to excessive force, or were illegal in some other way." As recent as January 2008, an
appellate court in Indiana stated in a footnote that, because Indiana Code § 35-41-3-3 "creates a
statutory duty to use reasonable force in arresting a person, officers are not immune from such a
claim under ITCA." *N.J. ex rel. Jackson v. Metro. Sch. Dist. of Washington Twp.*, 879 N.E.2d
1192, 1197 n.2 (Ind. Ct. App. 2008) (citing holding from *Patrick v. Miresso*, 848 N.E. 2d 1083
(Ind. 2006), that an officer's negligent driving was not within the ITCA law enforcement
immunity provision because there was a statutory duty to operate emergency vehicles "with due
regard for the safety of all person").

In considering questions of state law, this Court must determine the issues as it believes
the Indiana Supreme Court would. The parties have not presented the Court with adequate
guidance on this issue, which remains unresolved even in the state courts. Because the Court is
not prepared to rule that police offers who use unreasonable force during an arrest are immune
from liability under the ITCA, the Court will deny summary judgment based on law
enforcement immunity for the Defendants on the state law claims.

The Defendants also claim immunity under Indiana Code § 34-13-3-3(7), which
provides immunity for the performance of a discretionary function. However, they provide no

legal analysis for why the are entitled to immunity under that provision. Their entire analysis is under the law enforcement immunity provision, Ind. Code § 34-13-3-3(8). Because the Defendants have the burden of showing they are entitled to judgment as a matter of law at the summary judgment stage, Fed. R. Civ. P. 56(c), the Court will deny the motion for summary based on this immunity provision for the Defendants on the state law claims.

**F.      Fifth and Sixth Amendment Claims**

The Defendants move for summary judgment on any claims arising under the Fifth and Sixth Amendments. It is not clear from the complaint what claims the Plaintiff might pursue under these amendments, and she does not state any opposition to the Defendants' motion on these claims. As such, the Court will grant the motion as to any Fifth and Sixth Amendment claims.

**ORDER**

For the reasons stated, the motion for summary judgment (DE 32) is **GRANTED IN PART** and **DENIED IN PART**.

The motion is **GRANTED** as to any § 1983 claims against Defendants Dulin and Trusty in their official capacities; as to any § 1983 claims in any capacity against Defendants Sims, Starke County Sheriff's Department, and Starke County, Indiana; as to any state law claims against Defendants Dulin, Trusty, and Sims in their individual capacities; and as to any claims against any Defendant in any capacity under the Fifth and Sixth Amendments.

The motion is **DENIED** as to the Plaintiff's claims under the Fourth Amendment for the unreasonable denial of medical care against Defendants Dulin and Trusty in their individual capacities, and as to any state law claims against Defendants Starke County Sheriff's Department, Starke County, Indiana, and Defendants Dulin, Trusty, and Sims in their official capacities.

The Defendants did not move for summary judgment as to the excessive force claims against Defendants Dulin and Trusty, so those claims also remain pending.

SO ORDERED on May 1, 2008.


 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT